IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MARVIN MCELROY,

    Petitioner,                                No. CIV S-09-2112 GEB CHS P

    vs.

MICHAEL MARTEL,

    Respondent.               <u>FINDINGS AND RECOMMENDATIONS</u>

                                  /

## I.  INTRODUCTION

Petitioner Marvin McElroy is a state prisoner proceeding pro se with a petition for writ of habeas corpus brought pursuant to 28 U.S.C. §2254.  Petitioner is currently serving an indeterminate sentence of life in prison following his 1983 convictions for burglary and first degree murder with use of a firearm in the Alameda County Superior Court.  Petitioner challenges the execution of his sentence, and specifically, the decision of the Board of Prison Terms following a September 19, 2007 parole consideration hearing that he was not suitable for parole.

## II.  BACKGROUND

The facts of petitioner's commitment offenses will be set forth in greater detail below; for the time being, it suffices to say that in 1983, he was convicted by jury of burglary and

1

first degree murder with use of a firearm. He was sentenced to a term of 14 months plus 26 years to life in state prison. During his incarceration, petitioner has consistently maintained that he is innocent of the commitment offenses.

On September 19, 2007 a panel of the Board of Prison Terms conducted a second subsequent hearing to determine whether petitioner would pose an unreasonable risk of danger or threat to society if released from prison, and thus whether he was suitable for parole. Citing petitioner's commitment offenses and criminal history, his failure to upgrade educationally, insufficient participation in prison programming, and inadequate plans for parole, the Board determined that petitioner was not suitable for parole.

Petitioner challenged the Board's decision in a petition for writ of habeas corpus to the Alameda County Superior Court. He presented identical claims to those presented in the pending federal petition. The Alameda County Superior Court denied the petition in a brief written decision dated February 25, 2008. Petitioner sought relief in the California Court of Appeal and the California Supreme Court; those petitions were likewise denied, but without written opinions.

### III. CLAIMS FOR REVIEW

Petitioner claims that (A) the Board's denial of parole violated his due process rights because it was based on an inaccurate statement of facts relating to petitioner's commitment offenses and because there was insufficient evidence in the record to support the decision; and (B) the parole commissioners on the Board of Parole Hearings are biased.

### IV. APPLICABLE LAW FOR FEDERAL HABEAS CORPUS

An application for writ of habeas corpus by a person in custody under judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. §2254(a); *see also Peltier v. Wright*, 15 F.3d 860, 861 (9th Cir. 1993); *Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985) (*citing Engle v. Isaac*, 456 U.S. 107, 119 (1982)). This petition for writ of habeas corpus was filed after the effective date of, and thus is subject to,

the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  *Lindh v. Murphy*, 521 U.S. 320, 326 (1997); *see also Weaver v. Thompson*, 197 F.3d 359 (9th Cir. 1999).  Under AEDPA, federal habeas corpus relief also is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Williams v. Taylor*, 529 U.S. 362, 402-03 (2000); *Lockhart v. Terhune*, 250 F.3d 1223, 1229 (9th Cir. 2001).

V.  DISCUSSION

A.  Due Process

The Due Process Clause of the Fourteenth Amendment prohibits state action that deprives a person of life, liberty, or property without due process of law.  A person alleging a due process violation must first demonstrate that he or she was deprived of a protected liberty or property interest, and then show that the procedures attendant upon the deprivation were not constitutionally sufficient.  *Kentucky Dep't. of Corrections v. Thompson*, 490 U.S. 454, 459-60 (1989); *McQuillion v. Duncan*, 306 F.3d 895, 900 (9th Cir. 2002).

A protected liberty interest may arise from either the Due Process Clause itself or from state laws.  *Board of Pardons v. Allen*, 482 U.S. 369, 373 (1987).  The United States Constitution does not, in and of itself, create for prisoners a protected liberty interest in the receipt of a parole date.  *Jago v. Van Curen*, 454 U.S. 14, 17-21 (1981).  If a state's statutory parole scheme uses mandatory language, however, it "'creates a presumption that parole release will be granted' when or unless certain designated findings are made," thereby giving rise to a constitutional liberty interest.  *McQuillion*, 306 F.3d at 901 (*quoting Greenholtz v. Inmates of Nebraska Penal*, 442 U.S. 1, 12 (1979)).

3

In California, Penal Code section 3041 sets forth the state's legislative standards for determining parole for life-sentenced prisoners. Subsection (a) provides that "[o]ne year prior to the inmate's minimum eligible parole release date a panel... shall meet with the inmate and shall normally set a parole release date." Subsection (b) provides an exception to the regular and early setting of a lifer's term, if the Board determines "that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration..." Based on this statute, California state prisoners who have been sentenced to prison with the possibility of parole have a clearly established, constitutionally protected liberty interest in receipt of a parole release date. *Irons v. Carey*, 505 F.3d 846, 850-51 (9th Cir. 2007) (*citing Sass v. Cal. Bd. of Prison Terms*, 461 F.3d 1123, 1128 (9th Cir. 2006)); *Biggs v. Terhune*, 334 F.3d 910, 914 (9th Cir. 2003); *McQuillion*, 306 F.3d at 903; and *Allen*, 482 U.S. at 377-78 (*quoting Greenholtz*, 442 U.S. at 12)).

Nevertheless, the full panoply of rights afforded a defendant in a criminal proceeding is not constitutionally mandated in the context of a parole proceeding. *See Pedro v. Or. Parole Bd.*, 825 F.2d 1396, 1398-99 (9th Cir. 1987). The Supreme Court has held that a parole board's procedures are constitutionally adequate if the inmate is given an opportunity to be heard and a decision informing him of the reasons he did not qualify for parole. *Greenholtz*, 442 U.S. at 16. Additionally, as a matter of California state law, denial of parole to state inmates must be supported by at least "some evidence" demonstrating future dangerousness. *Hayward v. Marshall*, 603 F.3d 546, 562-63 (9th Cir. 2010) (en banc) (citing *In re Rosenkrantz*, 29 Cal.4th 616 (2002), *In re Lawrence*, 44 Cal.4th 1181 (2008), and *In re Shaputis*, 44 Cal.4th 1241 (2008)).

California's "some evidence" requirement is a component of the liberty interest created by the state's parole system." *Cooke v. Solis*, 606 F.3d 1206, 1213 (9th Cir. 2010). The federal Due Process Clause requires, in turn, that California comply with its own "some

4

evidence" requirement. *Pearson v. Muntz*, 606 F.3d 606, 609 (9th Cir. 2010) (per curiam). Thus, a reviewing court such as this one must "decide whether the California judicial decision approving the... decision rejecting parole was an "unreasonable application" of the California 'some evidence' requirement, or was "based on an unreasonable determination of the facts in light of the evidence." *Hayward*, 603 F.3d at 562-63.

The analysis of whether some evidence supports the denial of parole to a California state inmate is framed by the state's statutes and regulations governing parole suitability determinations. *See Irons*, 505 F.3d at 851. A reviewing court "must look to California law to determine the findings that are necessary to deem [a petitioner] unsuitable for parole, and then must review the record to determine whether the state court decision holding that these findings were supported by 'some evidence' [ ] constituted an unreasonable application of the 'some evidence' principle." *Id*.

Title 15, Section 2402 of the California Code of Regulations sets forth various factors to be considered by the Board in its parole suitability findings for murderers. The Board is directed to consider all relevant, reliable information available regarding

> the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release.

15 Cal. Code Regs. §2402(b). The regulation also lists specific circumstances which tend to show suitability or unsuitability for parole. 15 Cal. Code Regs. §2402(c)-(d). The overriding concern is public safety and the focus is on the inmate's *current* dangerousness. *In re Lawrence*, 44 Cal. 4th at 1205. Thus, the proper articulation of the standard of review is not whether some evidence supports the stated reasons for denying parole, but whether some evidence indicates that the inmate's release would unreasonably endanger public safety. *In re Shaputis*, 44 Cal.4th 1241,

1254 (2008).  There must be a rational nexus between the facts relied upon and the ultimate conclusion that the prisoner continues to be a threat to public safety.  *In re Lawrence*, 44 Cal. 4th at 1227.

At petitioner's September 19, 2007 parole suitability hearing, the Board considered both positive and negative factors bearing on his suitability for parole, but ultimately concluded that he was not suitable.  In finding petitioner to be unsuitable for parole, the Board relied, in part, on the nature and gravity of his commitment offenses.  The Board read into the record the following summary of petitioner's commitment offenses, taken from a report prepared for the Board in 2006:

> On April 10, 1982, McElroy and two accomplices, Miller and Carter, who were all labeled as a residential robbery team, attempted to rob Mr. Kianosh Fadjard... and burglarize his residence.  This was a third return to Mr. Fadjard's residence with the intent to burglarize the residence.  McElroy recruited co-defendant Jonna Colburn, a 20-year-old drug addict into their ring.  Colburn was acquainted with Fadjard and McElroy took advantage of this.  He instructed Colburn to gain entry into the residence and gain control of the situation by shooting Fadjard.  This would clear the path for McElroy and his accomplices to enter the residence to rob.  Colburn did as instructed and gained entry into the residence and shot Kianosh Fadjard with a .38 caliber revolver three times.  The revolver had been supplied by McElroy.  Mr. Fadjard was shot once in the leg, once in the arm, and once in the abdomen, which resulted in the piercing of the aorta [and his death].  She then shot Mr. Fadjard's 69-year-old mother, Hoochek Fadjard, in the head.  The bullet only grazed her skull and she spent a few days in the hospital.  After the shooting occurred, Colburn ran from the residence to McElroy and the others.  She advised them to go for it.  Then it was decided not to go forward with the robbery because there had been too many shots fired.  They subsequently fled the area.

(Transcript of Subsequent Parole Consideration Hearing, September 19, 2007, at 14-16.)

Petitioner indicated that the foregoing statement of facts was not true.  Asked to give his version of the facts, he denied involvement and denied being present at Fadjard's house that night with the other individuals.  In addition, he repeatedly requested that the Board allow him to read into the record a different statement of facts, one submitted by the California

6

Attorney General's Office to the United States District Court for the Northern District of California during previous federal habeas corpus proceedings in which petitioner challenged the sufficiency of the evidence supporting his convictions.[1] The Board denied petitioner's request to read the Attorney General's version of the facts into the record but allowed the statement to be submitted for the Board to review during deliberations.

Although petitioner denies the facts of his commitment offenses as read into the record by the Board, he failed to provide the Board with any evidence demonstrating their unreliability and likewise fails to do so here. The facts of petitioner's offense as stated by the Board are supported in the record. Thus, the Board was authorized to rely on those facts as some evidence that petitioner was unsuitable for parole to the extent that they remained probative to an assessment of his current dangerousness.

Under the applicable state regulations, factors relating to a commitment offense tend to show unsuitability for parole where (A) multiple victims were attacked, injured or killed; (B) the offense was carried out in a dispassionate and calculated manner, such as an execution-style murder; (C) the victim was abused, defiled or mutilated; (D) the offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering; or (E) the motive for the crime is inexplicable or very trivial in relation to the offense." Cal. Code Regs. tit. 15 §2402 (c)(1)(A)- (E).

---

[1] In some respects, the statement of facts petitioner wanted to read to the Board described his involvement with the team of robbers in slightly more favorable terms than the statement that was actually relied upon by the Board. For example, it was set forth that petitioner was a newcomer to the residential robbery gang, called the "beeper robbers," as opposed to being an established leader. Also, the brief indicated that it was petitioner's accomplice Miller, not petitioner, who handed Colburn the gun that was used to kill Fardjad. Nevertheless, this other statement of facts does nothing to advance petitioner's contention that he was innocent of the crimes of conviction. In no less than 19 pages, it describes in detail petitioner's involvement with the other individuals in a string of horrific armed robberies and burglaries, including a previous robbery at the home of Fardjad and his mother. It defies logic that petitioner so urgently wanted to place this evidence before the Board for consideration, in light of the fact that he was simultaneously claiming that he was completely innocent of the offenses. The Board's frustration with petitioner in this regard was clear.

In this case, the Board explained its reliance on petitioner's offense as follows:

> I think, Mr. McElroy that we have a, you know, obviously have a few issues we need to discuss with you but with regards to the fact that you are claiming innocence to this commitment offense as well as to some other behaviors when there is such a preponderance of evidence against you, is difficult for us to kind of understand those two stories. You were convicted by a jury trial of murder one and I think to quote the Deputy DA, there is voluminous evidence that was available. As well, the commitment offense that I read into the record and Ms. Theisen elaborated on, was absolutely horrifying to me. And, she also indicated those offenses were described as professional, premeditated, and sophisticated. So, and speaking for myself, I'm having a difficult time trying to figure out how your claim of not being involved in this goes with the voluminous evidence, not to mention that specific paragraph that your sister wrote in her letter, indicating your behavior and participation in burglaries. ...Mr. McElroy, the offense[s] that you were charged with and found guilty of, were horrific. They were carried out in an extraordinarily cruel and callous manner. I mean, we're taking a look at repeated offenses against families. Preying upon older people. Setting them up and deceiving them with girls at the door in need. It's horrific. Multiple victims were attacked. One was killed. Not to mention the fact that that same man's mother was shot. The offenses were carried out in a dispassionate [and] calculated manner. These were planned events that you were found guilty of and you were the ring leader. Not only just found guilty but found guilty of being the ring leader in all of these events. Repeated robberies, assaults on people, threats. Because of that, I would indicate these victims were abused during these crimes, physically and emotionally. You and your ring of cohorts could have burglarized homes that were not inhabited but the evidence indicates you specifically chose homes that were inhabited with elderly people, or at least people several years older than you. And at the time of this commitment offense, you were 33 years old. Long past the age of knowing better.

(Transcript of Subsequent Parole Consideration Hearing, September 19, 2007, at 73-74, 75.)

The Board cannot require an inmate to admit guilt in order to be found suitable for parole. Cal. Penal Code §5011(b); 15 Cal Code Regs. §2236; *see also In re Aguilar*, 168 Cal.App.4th 1479, 1491 (2nd Dist. 2008) (inmate need not admit guilt or "change his story" to be found suitable for parole). Nevertheless, the Board must consider the inmate's "past and present attitude toward the crime" and any lack of remorse or understanding of the nature and magnitude of the offense. 15 Cal. Code Regs. §§ 2402(b), 2402(d)(3); *see also In re Shaputis*, 44 Cal.4th

1241, 1261 n.20 ("petitioner's failure to take full responsibility for past violence, and his lack of insight into his behavior, establish that the circumstances of petitioner's crime and violent background continue to be probative to the issue of his current dangerousness.")

In this case, in denying parole, the Board did not improperly impose a requirement that petitioner admit guilt in order to be found suitable. The Board articulated additional negative factors, aside from those related to the commitment offenses and petitioner's past and present attitude thereto, which weighed in favor of denying parole. The Board cited petitioner's criminal history, failure to upgrade educationally, insufficient participation in prison programming, and inadequately developed plans for parole. These other factors demonstrate a nexus between the facts in the record regarding petitioner's commitment offenses, which the Board may accept as proven and true, and the ultimate conclusion that petitioner still posed a risk of danger or threat to the public. These other factors also independently demonstrate some evidence in the record that petitioner was not suitable for parole.

The Board considered petitioner's prior record and found that his offense was part of an escalating pattern of criminal conduct. A prisoner's previous record of violence tends to show unsuitability for parole where "on previous occasions [the prisoner] inflicted or attempted to inflict serious injury on a victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age." 15 Cal. Code Regs. §2402(c)(2). A prisoner's entire criminal history, including involvement in any reliably documented criminal misconduct, is additionally relevant under section 2402(b).

Here, aside from the offenses of conviction, it was reliably documented that petitioner was involved in much other uncharged violence including other robberies and burglaries with the beeper gang. In addition, in 1969, petitioner was twice convicted of burglary for which he served two terms of probation and, after the second conviction, 45 days in jail. Petitioner's commitment offense was not some isolated act of criminal misconduct, but rather, as the presiding commissioner stated, it was his "whole lifestyle," for an extended period of time.

In this case, the extent of reliably documented criminal conduct that petitioner has involved himself in constitutes some evidence that he remained unsuitable for parole.

The Board also cited factors relating to petitioner's institutional activities. Specifically, the Board cited petitioner's failure to upgrade educationally and vocationally and his "limited" program participation overall, including self-help. Under the relevant statutory scheme, a prisoner's institutional activities tend to show suitability for parole where they "indicate an enhanced ability to function within the law upon release." 15 Cal. Code Regs. §2402(d)(9). Thus, institutional activities are a parole suitability factor, as opposed to being an unsuitability factor where the inmate did not participate in such activities, however, the Board is authorized to consider *any* information that bears on an inmate's suitability for release. 15 Cal. Code Regs. §2402(b).

The record before the Board and this court demonstrates that petitioner has participated in various self-help programs during his incarceration. In the years just prior to the suitability hearing at issue, petitioner had participated in Art Therapy, Anger Management, Men's Communication Group, Houses of Healing, and Coping Skills for Life. Moreover, there is evidence that he consistently attended these or other personal improvement programs in previous years. Given that the Board did not identify any specific type of self-help programming that petitioner would benefit from but failed to avail himself of, this court cannot find that some evidence supports the Board's finding that petitioner was not suitable for parole because of insufficient self-help programming.

On the other hand, the Board's finding that petitioner failed to upgrade educationally is supported in the record, as is his failure to complete a vocation. Realistic plans for release and marketable skills are factors that tend to show suitability for parole. 15 Cal. Code Regs. §2402(d)(8). In this case, the Board noted that petitioner had not taken any college courses nor gained any marketable skills while in prison. Petitioner indicated that he planned to reside with his sister but failed to demonstrate to the Board that he actually had an offer to live with her.

Likewise, he stated he intended to seek employment through a union or a family member, but failed to provide evidence of a specific employment plan or any demonstrated efforts at making an employment plan. The absence of marketable skills and demonstrated plans for release bear negatively on a determination of petitioner's suitability for parole and constitute some evidence to support the Board's decision in this case.

On the record before the Board and this court, there is some evidence that supports a conclusion that petitioner was not suitable for parole at the time of the September 19, 2007 suitability hearing. Circumstances relating to petitioner's commitment offense, criminal history, failure to upgrade educationally or vocationally, and failure to demonstrate realistic parole plans provide the required modicum of evidence to support the Board's 2007 denial of parole. The Board's decision withstands the minimally stringent "some evidence" test and has not violated petitioner's right to due process of law.

B.   Alleged Bias

Petitioner further claims that the parole commissioners on the Board of Parole Hearings are "pervasively biased" because they have a "vested interest" in denying parole to prisoners who are actually suitable. Petitioner explains, for example, that many of the members have backgrounds in law enforcement or corrections.

Although petitioner has a due process right to parole consideration by a neutral, impartial decision-maker, his claim of bias must be supported by the record. *See O'Bremski v. Maas,* 915 F.2d 418, 422 (9th Cir. 1990) (an inmate is "entitled to have his release date considered by a Board that [is] free from bias or prejudice"); *Jones v. Gomez*, 66 F.3d 199, 204-05 (9th Cir. 1995) ("[c]onclusory allegations which are not supported by a statement of facts do not warrant habeas relief.")). Here, petitioner offers no specific factual allegations with respect to Commissioners Dennis Smith and Linda Shelton, who presided over his September 19, 2007 parole suitability hearing. It is further noted that neither petitioner nor his attorney objected to Commissioners Smith or Shelton when given the opportunity to do so at the hearing.

The Board's decision in this case was thorough and factually specific. Nothing in the record demonstrates bias on the part of either commissioner. Since petitioner offers no evidence to support his claim of parole bias, relief should be denied.

## VI.  CONCLUSION

For the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's application for writ of habeas corpus be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within seven days after service of the objections. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991). In any objections he elects to file petitioner may address whether a certificate of appealability should issue in the event he elects to file an appeal from the judgment in this case. *See* Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED: August 9, 2010

CHARLENE H. SORRENTINO
UNITED STATES MAGISTRATE JUDGE